[No. 21030. In Bank.—May 31, 1894.]

## THE PEOPLE, RESPONDENT, *v.* MARY E. MARTIN, APPELLANT.

CRIMINAL LAW—OBTAINING PROPERTY UNDER FALSE PRETENSES—TRANS-
FER WITH INTENT TO DEFRAUD CREDITORS.—The offense of obtaining
money or other personal property by false and fraudulent pretenses is
committed against the public, and not against the individual, and there
is no principle of law that will bar the state from prosecuting a criminal
because some other person is a *particeps criminis;* and an information
charging that the false pretenses consisted of representations to the
person defrauded by the defendant, that a judgment in a large sum of
money had been obtained against her in another state, and that, believ-
ing such statements, she was induced to, and did, transfer her property
to the defendant in order to avoid the application of her property to the
satisfaction of such judgment, states a public offense, which is not
affected or barred by the intention of the person defrauded.

ID.—OFFENSE DISTINGUISHED FROM GRAND LARCENY—ASSIGNMENT IN
TRUST.—In grand larceny, the owner of the property does not intend
to part with the title and possession of it, while, in the offense of obtain-
ing property under false pretenses, the owner does intend to part with
the title and possession; and the offense is not grand larceny where the
title to the property is transferred by the assignment thereof in trust.

ID.—AGREEMENT FOR SUPPORT—STATE NOT ESTOPPED.—The fact that the
assignment entered into appears on its face to be a valid agreement for
the transfer of property, in consideration of an agreement upon the part
of the defendant to support and care for the prosecutrix during the
remainder of her life, does not estop the state, which is not a party to
the contract, from proving that the transfer was fraudulently induced
by false pretenses for the purpose of avoiding the application of the
property of the prosecutrix to the satisfaction of a judgment fraudu-
lently represented as existing against her; and the rules of evidence in
civil cases as to a direct or collateral attack upon the contract by any
of the parties to it are entirely inapplicable.

ID.—VARIANCE BETWEEN ALLEGATIONS AND PROOF.—Where there is no
variance between the allegations and the proof as to portions of the
property described in the information, a variance as to a particular piece
of property is in no way fatal to a judgment of conviction.

ID.—CONTRACT INDUCED BY FALSE PRETENSES—PROPERTY OBTAINED
UNDER CONTRACT.—The fact that the written contract entered into
between the parties was induced by false pretenses does not prevent a
prosecution for the obtaining of property under the contract as a result
of the false pretenses, there being a causal relation between the pre-
tenses and the transfer of the property.

ID.—EVIDENCE—OBJECTIONS TO WEIGHT OF TESTIMONY.—Where objec-
tions to evidence go to the weight of the testimony, rather than to its
admissibility, the court does not err in admitting it, although it is some-
what remote, and relates to an incident not directly traceable to the
accused.

Appeal from a judgment of the Superior Court of Alameda County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Welles Whitmore,* and *M. C. Chapman,* for Appellant.

The allegation in the information that the defendant represented to Sarah Leonard that parties were about to seize her property to satisfy a judgment, and that Miss Leonard for that reason placed her property in defendant's hands, is a complete bar to the prosecution, as Miss Leonard was *particeps criminis* to the transaction. (*McCord* v. *People,* 46 N. Y. 470; *State* v. *Crowley,* 41 Wis. 271; 22 Am. Rep. 719; *People* v. *Stetson,* 4 Barb. 151.) If any offense was committed it was larceny, and not the offense of obtaining money under false pretenses. (*State* v. *Anderson,* 47 Iowa, 142; *Commonwealth* v. *Barry,* 124 Mass. 325; *People* v. *Rae,* 66 Cal. 423; 56 Am. Rep. 102; *Commonwealth* v. *Eichelberger,* 119 Pa. St. 254; 4 Am. St. Rep. 642; *State* v. *Hall,* 76 Iowa, 85; 14 Am. St. Rep. 204; *March* v. *State,* 117 Ind. 547; *Miller* v. *Commonwealth,* 78 Ky. 15; 39 Am. Rep. 194; *Ross* v. *People,* 5 Hill, 294; *Smith* v. *People,* 53 N. Y. 111; 13 Am. Rep. 474; *Zink* v. *People,* 77 N. Y. 114; 33 Am. Rep. 589; *State* v. *Kube,* 20 Wis. 217; 91 Am. Dec. 390; 2 Archbold's Criminal Practice and Pleading, 467; 3 Rice on Criminal Evidence, 705, 716, 723, 724.) The rules for the production of evidence in civil actions are applicable also to criminal actions, except as otherwise provided by the Penal Code. (Pen. Code, secs. 1102, 1321; 1 Roscoe's Criminal Evidence, 1, 2; 3 Rice on Criminal Evidence, sec. 6.) Even if the "general assignment" was procured by fraud and false representations made by the defendant to Miss Leonard, yet the instrument is not void, and cannot be treated as void. It is only voidable. (Civ. Code, sec. 1566; 2 Addison on Contracts, 1177; 1 Parsons on Contracts, 393–95, and note Y.) Such a contract may be re-

scinded by a civil action. (Civ. Code, sec. 1689.) Or
the injured party may ratify it and sue for damages.
(Wharton on Contracts, sec. 282; 2 Addison on Con-
tracts, 1173; *Loaiza* v. *Superior Court*, 85 Cal. 30; 20
Am. St. Rep. 197, and cases cited.) The "general
assignment," if voidable for want of full and free con-
sent of one of the parties, is for all that a valid, legal,
and binding contract, until set aside by the agreement
of the parties, or by the judgment of a court of competent
jurisdiction.   (Civ. Code, sec. 1566; *Commonwealth* v.
*Harkins*, 128 Mass. 79; 2 Addison on Contracts, 1177.)
And it is not subject to collateral attack, and its terms
and provisions could not be legally contradicted by the
prosecution.   (1 Rice on Criminal Evidence, secs. 157,
158, 162, 163, 176, 230, 279; *Frink* v. *Roe*, 70 Cal.
316; Civ. Code, sec. 1625; 1 Greenleaf on Evidence, sec.
275; *Ward* v. *McNaughton*, 43 Cal. 159.) The "general
assignment" itself is property, and to obtain such an
agreement by means of false representations and pre-
tenses would be obtaining property by false pretenses.
(Pen. Code, sec. 7, subd. 12; *People* v. *Reed*, 70 Cal. 529;
*Commonwealth* v. *Harkins*, 128 Mass. 79.) The defend-
ant cannot be convicted of obtaining money by false
pretenses, as the evidence shows that intermediate agree-
ments, orders, notices, certificates, and instruments in
writing, which are themselves property, were obtained
by means of the false pretenses, and not the money.
(*Regina* v. *Gardner*, 5 Lawson's, Crim. Defenses 287;
*Regina* v. *Bryan*, 5 Lawson's Crim. Defenses, 378;
*Regina* v. *Larner*, 5 Lawson's Crim. Defenses, 379;
*Regina* v. *Woodman*, 5 Lawson, 380; *Regina* v. *Carpenter*,
11 Cox, 600; *Morgan* v. *State*, 42 Ark. 131; 48 Am. Rep.
55; *Commonwealth* v. *Harkins*, 128 Mass. 79; *Common-
wealth* v. *Howe*, 132 Mass. 250; *McCord* v. *People*, 46
N. Y. 470; *Baker* v. *State*, 31 Ohio St. 314; 7 Am. & Eng.
Ency. of Law, 789; *Commonwealth* v. *Hutchison*, 114
Mass. 325; *Commonwealth* v. *Coe*, 115 Mass. 481; *Jackson*
v. *People*, 126 Ill. 139. See, also, *People* v. *Stone*, 9 Wend.
181; *People* v. *Genung*, 11 Wend. 18; 25 Am. Dec. 594;

*People* v. *Herrick,* 13 Wend. 87; *State* v. *Pryor,* 30 Ind. 350; *State* v. *Porter,* 75 Mo. 171.)

*Attorney General W. H. H. Hart, District Attorney Charles E. Snook, District Attorney George W. Reed, Assistant District Attorney L. S. Church,* and *E. M. Gibson,* for Respondent.

Even if it be admitted that Miss Leonard was herself guilty of a criminal offense, and became *particeps criminis,* still that fact would not be a bar to the prosecution. (*Commonwealth* v. *Morrill,* 8 Cush. 571; 2 Bishop on Criminal Law, 8th ed., secs. 468, 469, subd. 2; 1 Bishop on Criminal Law, 8th ed., secs. 256, 257; *Commonwealth* v. *Henry,* 22 Pa. St. 253; *Perkins* v. *State,* 67 Ind. 270; 33 Am. Rep. 89; *People* v. *Henssler,* 48 Mich. 49; *Regina* v. *Hudson,* Bell's C. C. 263; *Regina* v.      , 1 Cox C. C. 250; *In re Cummins,* 16 Col. 451; 25 Am. St. Rep. 291.) The contention that the so-called "general agreement" is not subject to collateral attack, and that its terms and conditions cannot be legally contradicted by the prosecution, is not well taken, as the state is the plaintiff, and is not a party to the agreement. (*Brown* v. *Thurber,* 77 N. Y. 613; 1 Greenleaf on Evidence, sec. 279; 1 Rice on Evidence, secs. 156–58; *Hussman* v. *Wilke,* 50 Cal. 250; *McMaster* v. *Insurance Co. of N. A.,* 55 N. Y. 222; 14 Am. Rep. 239.) Under the evidence the defendant is guilty of the offense of obtaining money under false pretenses, and not of the offense of grand larceny, as contended by appellant. (See 7 Am. & Eng. Ency. of Law, 700; *Commonwealth* v. *Barry,* 124 Mass. 325.) The claim that the evidence shows that the property fraudulently obtained of Miss Leonard consisted of the assignments and orders, and not the money, and that therefore the defendant was not proven to be guilty of the crime of obtaining money under false pretenses, is without merit, as the obtaining of the papers was an obtaining of the money. (*Regina* v. *Eagleton,* 33 Eng. Law. & Eq. 540; *Regina* v. *Martin,* 10 Cox C. C. 383; 7 Am. & Eng. Ency. of Law, 718 et seq.; 2 Russell on Crimes, 5th ed.,

554 et seq; *Regina* v. *Adamson,* 2 Moody C. C. 286 et seq.; *Regina* v. *Greathead,* 14 Cox C. C. 108; *Regina* v. *Greenhalgh,* 6 Cox C. C. 257; *Regina* v. *Kenrick,* 5 Ad. & E., N. S., Q. B. 48; *Queen* v. *Abbott,* 1 Den. C. C. 273; *Queen* v. *Dark,* 1 Den. C. C. 276; *Queen* v. *Garlick,* 1 Den. C. C. 276; *Queen* v. *Abbott,* 2 Cox C. C. 430; 2 Bishop on Criminal Law, secs. 432, 461, 483; 2 Wharton's Criminal Law, 7th ed., sec. 2124 a; Desty's American Criminal Law, sec. 149 h; *Commonwealth* v. *Hooper,* 104 Mass. 549; *Commonwealth* v. *Hutchison,* 114 Mass. 325; *Commonwealth* v. *Coe,* 115 Mass. 481; *People* v. *Herrick,* 13 Wend. 87; *Thomas* v. *People,* 34 N. Y. 351; *Jackson* v. *People,* 126 Ill. 139; *State* v. *Palmer,* 40 Kan. 474; *Roberts* v. *People,* 9 Col. 458; *Commonwealth* v. *Jeffries,* 7 Allen, 548; 83 Am. Dec. 712; *Commonwealth* v. *Lee,* 149 Mass. 179; *State* v. *Newell,* 1 Mo. 248; *Commonwealth* v. *Davidson,* 1 Cush. 33.)

GAROUTTE, J.—The appellant was convicted of obtaining money and other personal property from one Sarah E. Leonard by false and fraudulent pretenses. The information is laid under section 532 of the Penal Code, and the false pretenses upon which it is based consisted in the representations to said Leonard by the defendant that a judgment in a large sum of money had been obtained against her in the state of New York, and that her property would be seized and sold to satisfy such judgment. The information further states that said Leonard believed such statements, and, so believing, and in order to avoid the application of her property to the satisfaction of such judgment, she was induced to, and did, transfer and deliver said property to defendant.

The information contained various allegations other than those just noticed, and a demurrer was offered thereto upon various grounds; but we think the information well drawn, and our consideration of the alleged defects therein will be limited to the contention of appellant that the allegations we have in substance

quoted therefrom constitute a bar to the prosecution of the accused.   Possibly the state might be barred from conducting a criminal prosecution by reason of the acts of its duly constituted officers representing the state in such matters; but it is a novel proposition that the acts and conduct of a private individual, even though such individual be what is termed in law the prosecuting witness, could, under any imaginable circumstances, bar the state from the prosecution of a criminal.   Appellant states her position as follows:

" If, at the time that Sarah E. Leonard placed her property in the possession of the defendant, she believed that there was a valid and existing judgment for seventeen thousand dollars or eighteen thousand dollars against her in the state of New York, and she placed her property out of her hands to avoid its being applied towards the satisfaction of such judgment, her intentions were dishonest, and she was herself guilty of a criminal offense, and became *particeps criminis.*"

The case of *McCord* v. *People*, 46 N. Y. 472, appears to support the doctrine insisted upon by appellant, but the great weight of authority is to the contrary.   It is said by the court in *Commonwealth* v. *Morrill*, 8 Cush. 571: "Supposing that to be otherwise, and it should appear that Lynch (the party defrauded) had also violated the statute, that would not justify the defendants; if the other party has also subjected himself to a prosecution for a like offense, he also may be punished.   This would be much better than that both should escape punishment because each deserved it equally."   The doctrine of the foregoing case is approved by Mr. Bishop, in his work on Criminal Law, section 469, eighth edition.   The principle is also declared in the same work at sections 256 and 257.   See, also, *In re Cummins*, 16 Col. 451, 25 Am. St. Rep. 291.   From any aspect of the case the contention has no sound support. If the party defrauded is also guilty of a violation of the law he, too, should be prosecuted, rather than his offense should serve as a shield to the other's crime.

The offense is committed against the public, and not against the individual. The guilty party is prosecuted in the interest of the people of the state, and not in the interest of the party defrauded of his property. There is no principle of law that will bar the state from prosecuting a criminal because some other person is a *particeps criminis*. But, viewing the facts of this case in the light of the indictment, the defrauded party committed no offense whatever. How could she possibly do so, when the pretenses were all false, and the whole thing was but a scheme of lying and deceit? If such be a crime, she transferred no property to evade its application upon a money judgment which stood against her, for there was no such judgment. Her intention to make a transfer for that purpose avails nothing, for a person's intentions alone violate no law.

It appears from the testimony of the defrauded party, Leonard, that by reason of the statements of the defendant as to the existence of a judgment for a large amount against her in the state of New York, and for the purpose of preventing the seizure of such property upon executions based upon such judgment, she transferred and assigned to the defendant, in addition to other property, one mortgage and bond for the sum of four thousand dollars, four certain bank books evidencing deposits in the sum of seven thousand three hundred and eighty-one dollars in the name of Sarah E. Leonard, in certain banks located in the city of Rochester, New York, it further appearing that the defendant subsequently secured the money represented by such books. Section 1110 of the Penal Code provides that in a case like the present one, where the false pretense is oral, it must be proven by the testimony of two witnesses, or of one witness and corroborating circumstances. Without entering into a discussion of the interesting question as to whether corroborating circumstances may not be shown by the evidence of the same witness who testifies directly to the false pretense, we are well satisfied that other evidence in the record is amply sufficient

to furnish the corroboration demanded by the statute. The entire conduct of the defendant, taken in connection with her statements to third parties, especially her declarations to J. J. Norman, Mrs. Hagan, and to Charles N. Leonard, when she went to the state of New York for the purpose of realizing upon the four thousand dollar mortgage and bond, furnish the corroborating evidence contemplated by the law.

It is insisted that if the evidence in the case disclosed defendant guilty of an offense, it is the offense of grand larceny, and not the statutory crime of obtaining property from another by false pretenses. Conceding the distinction between these two offenses to be as claimed by defendant's counsel, to wit, that in grand larceny the owner of the property does not intend to part with the title and possession of it, while in the offense of obtaining property by false pretenses the owner does intend to part with the title and possession; still, tried by such a test, the evidence in this case determines that the information is properly laid. The proper assignment of notes, mortgages, and bank books by the true owner thereof, accompanied by a delivery, not only passes the actual possession, but transfers the title to the assignee. Looking at this question in its most favorable light for the accused, it is at least apparent that the title to this property by the assignment thereof passed to her in trust.

The prosecution offered in evidence an agreement and assignment entered into between the defendant and the prosecutrix at the time the alleged false pretenses were made, wherein the property described in the information was transferred and assigned to the defendant in consideration of an agreement upon her part to support and care for the prosecutrix during the remainder of her life. It is now insisted that, this contract showing upon its face a valid transfer of the property to the accused, the prosecution is bound by the evidence, and is estopped and barred from proving a different state of facts, and that until that contract is set aside

by a court of equity upon some ground in equity this prosecution cannot be maintained. The contention is directly in line with the principle insisted upon by the accused upon a former branch of the case, where it was claimed that the acts of Leonard had barred the prosecution of the defendant. The parties to that contract and the parties to this prosecution are not the same. The state is a party to the prosecution but no party to the contract. If the contract when offered by the people is conclusive as against them, it certainly would be a perfect defense if offered by the accused, but it is not possible that the people in the prosecution of a defendant charged with crime can be estopped in any such manner. The contract is simply a piece of evidence in the case, and stands upon the same plane as any other piece of evidence, and is weighed in the same scales. As tending to assist the cause of the defendant, the contract by its terms indicates that the prosecutrix parted with this property to the defendant in a lawful way, and for a lawful purpose, and that crime, or even fraud, were entire strangers to the transaction. But the complaining witness testified that her reasons for parting with her property were those set forth in the information, and this conflict in the evidence was a matter purely for the jury's consideration. The defendant's guilt of the offense charged must appear to the jury beyond a reasonable doubt, from all the evidence placed before it, and this contract but bears its part in furnishing light—be that light strong or weak—upon the ultimate fact as to the guilt or innocence of the defendant. The rules of evidence in civil cases as to a direct or collateral attack upon the contract by any of the parties to it are entirely inapplicable to any thing involved in this case.

We see no variance between the allegations and the proof as to portions at least of the property described in the information, and a variance as to any particular piece of property is in no way fatal to an affirmance of the judgment. The information and the evidence appear

to be in line as to the bond and mortgage, and, even conceding that the bank books were not transferred to the defendant, still the money deposited in the banks and evidenced by the books was transferred, and such fact was alleged in the information.    Under instructions from the prosecutrix the money was collected by the First National Bank of Oakland and paid to the defendant.    If it was not all actually paid to her it was deposited to her credit in the bank, and subject to her order alone, and this was in all respects equivalent to payment.

It is further insisted that the written contract entered into between these parties, and to which reference has already been made, was obtained from the defrauded party by reason of the false pretenses; that such contract of itself was property; that the property described in the information was transferred to the defendant by virtue of the terms of that contract, and not by reason of the false pretenses, and that consequently the prosecution should have been based upon a procurement of the contract by the false pretenses, and not upon a procurement of the property described in the information.

This principle is contended for upon the ground that the pretenses are too remote from the obtaining of the property.    After an examination of many cases, we are well satisfied that sound reason and a great preponderance of authority is opposed to this view.    It is said in *Regina* v. *Martin*, L. R. 1 C. C. 56: "It is impossible to contend seriously that the case is not within the statute because the chattel is obtained under a contract induced by the false pretense."    Desty, in his American Criminal Law, section 149 h, states the rule to be as follows: "The false pretense must be the operative cause of the transfer of the property, and there must be a causal relation between the pretense and the transfer that must directly cause the transfer.    That the goods were obtained immediately through a contract to which the false pretenses induced the prosecutor to consent is no defense, if a causal relation exist between the con-

tract and the false pretense"; and Wharton and Bishop state a similar doctrine. If this contract or assignment is such that it may be treated as property, and thus form the basis of a prosecution for obtaining it under the pretenses relied upon in this case, as is claimed by appellant, then we can only say that such claim shows the accused to be guilty of an additional offense, rather than it creates a bar to the present prosecution. The creation of this instrument, whatever it may be termed, was but one step toward the commission of the crime of which the defendant has been convicted. It was a part of the machinery employed in obtaining the property. It was but the first act of the play, for it was not the purpose of the accused simply to procure an execution of the instrument; actual possession of the property was the important thing, and the creation of the writing was but a means to the end. This instrument creates no bar to the present prosecution, and the property described in the information was secured by defendant by means of the false pretense she is shown to have made.

Under objection of the defendant, the prosecutrix testified that she got up one morning and felt quite sick, and upon examination she discovered the gas to be turned on slightly in her room, and that she was positive it was turned off when she retired the previous night. This incident occurred when she was stopping at the Jones street house with defendant. Previously to this event she had removed to this room from a front room, owing to the suggestion of the defendant that there were a great many windows in the front room, and for that reason she was in danger of being chloroformed by detectives. The entire tenor of the defendant's conversations addressed to the complaining witness was, that she was continually surrounded by danger, and that her enemies and hired detectives were ever on the alert for the purpose of both despoiling her of her property and forcibly seizing her person. It is the theory of the prosecution that this course of conduct upon

the part of the defendant was all a sham and a lie, and
carried on for the purpose of frightening the ·prosecu-
trix and thereby more effectually to keep her under
absolute control that she might be more readily looted
of her property; for at these times the defendant was
posing as the one friend who was protecting her in the
midst of her enemies.   As a part of such scheme, and
as directly in line with the suggestion of a change of
room and the liability of being chloroformed, this inci-
dent of the gas escaping was offered in evidence.   The
evidence is somewhat remote, and the incident not
directly traceable to the accused, but these objections go
to its weight rather than to its admissibility, and we
perceive no ·error in the ruling of the court in this
regard.

We have examined the additional assignments of er-
ror based upon the rulings of the court as to the admis-
sion and rejection of evidence, and hold none of them
to be well taken.

For the foregoing reasons, it is ordered that the judg-
ment and order be affirmed.

HARRISON, J., McFARLAND, J., DE HAVEN, J., and
VAN FLEET, J., concurred.

Rehearing denied.