This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38043**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.

**BRANDON J. BARRON,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Fred T. Van Soelen, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Gregory B. Dawkins, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** Defendant Brandon Barron appeals his conviction for criminal sexual penetration (CSP) in the third degree contrary to NMSA 1978, Section 30-9-11(F) (2009). On appeal, Defendant argues that the district court: (1) abused its discretion in denying his request for a statement of facts; (2) abused its discretion in denying his motion for Victim's medical and psychological records; and (3) erred in failing to properly instruct the jury on mental capacity and unlawfulness. We affirm.

**BACKGROUND**

**{2}**     Defendant, a door-to-door vacuum cleaner salesman, stopped by Victim's home on March 15, 2017. Victim allowed Defendant into her home to perform a demonstration of the vacuum cleaner's features, and Defendant offered to show Victim an attachment for cleaning mattresses. Victim agreed, and Defendant and Victim proceeded to Victim's bedroom. After demonstrating the mattress attachment, Defendant asked Victim questions about her personal life and romantic interests. Victim, who testified at trial that she had been raped and beaten when she was nineteen, suspected Defendant wanted to have sex, and thought that by proactively offering oral sex, she could avoid being beaten and raped. Accordingly, she offered to engage in oral sex with Defendant, Defendant agreed, and Victim and Defendant engaged in oral sex. Thereafter, Defendant suggested that Victim and Defendant have anal sex. Victim agreed, but during the act, Victim told Defendant to stop because he was hurting her. Defendant did not stop, and instead kept his hands over hers and held her down, continuing until ejaculation. Defendant was subsequently arrested, and a grand jury indicted him on a charge of CSP in the third degree. At trial, Defendant was convicted and sentenced to three years in prison. This appeal followed.

## DISCUSSION

### I.     The District Court Did Not Abuse Its Discretion in Denying Defendant's Request for a Statement of Facts

**{3}**     Defendant contends that the district court abused its discretion in denying his request for a statement of facts, and that this error prejudiced Defendant by rendering him unable to properly defend against the charge.[1] "We review the district court's denial of a motion for a [statement of facts] for an abuse of discretion." *State v. DeAngelo M.*, 2015-NMCA-019, ¶ 31, 344 P.3d 1019. "An abuse of discretion occurs when the ruling is clearly against the logic and effects of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438 (internal quotation marks and citation omitted).

**{4}**     Defendant was indicted on the charge of CSP in the third degree, which "consists of all criminal sexual penetration perpetrated through the use of force or coercion not otherwise specified in this section." Section 30-9-11(F). "[F]orce or coercion" is defined in relevant part, as "the use of physical force or physical violence" and "the perpetration of criminal sexual penetration . . . when the perpetrator knows or has reason to know that the victim . . . suffers from a mental condition that renders the victim incapable of understanding the nature or consequences of the act[.]" NMSA 1978, § 30-9-10(A)(I),

---

1In his brief, Defendant cites to Art. II, Section XIV of the New Mexico Constitution, which provides in "all criminal prosecutions, the accused shall have the right to . . . demand the nature and cause of the accusation[.]" Other than citing to this provision of the Constitution, Defendant does not otherwise develop an argument regarding how his constitutional rights were violated. We therefore limit our analysis to whether the district court abused its discretion in denying Defendant's request for a statement of facts. *See State v. Arias*, 2018-NMCA-057, ¶ 30, 427 P.3d 129 (stating "where a defendant fails to develop requisite aspects of an argument, this Court will not construct an argument for him" (internal quotation marks and citation omitted)).

(4) (2005). Prior to trial, the prosecutor explained that he was considering proceeding either on the theory that Defendant used force, or on the theory that Victim had diminished mental capacity, and that the State had not yet elected which theory it would present at trial. Defendant filed a pretrial motion requesting that the State be compelled to provide him a statement of facts, averring that the indictment against him was "vague, indefinite, uncertain and insufficient in general terms and conclusions." The district court denied the motion.

**{5}** It is generally unnecessary for the State to specify in an indictment, the "time of the commission of [the] offense; . . . place of the commission of offense; . . . means by which the offense was committed . . . intent with which an act was done; . . . description of any place or thing . . . the specific degree of the offense charged; . . . any statutory exceptions to the offense charged; or any other similar allegation." Rule 5-205(A) NMRA. However, "[e]very accused has the right to be informed of the crime with which he is charged in sufficient detail to enable him to prepare his defense." *State v. Foster*, 1974-NMCA-150, ¶ 7, 87 N.M. 155, 530 P.2d 949. If "defendants do not have adequate notice of the charges filed against them, they cannot be expected to prepare a defense to those charges." *State v. Lente*, 2019-NMSC-020, ¶ 15, 453 P.3d 416. Accordingly, a defendant who believes he has inadequate notice of the charges against him, may file a motion and the "[district] court may order the state to file a statement of facts setting forth any or all of the unnecessary allegations[.]" Rule 5-205(C).

**{6}** This Court has previously held that the State need only provide "details sufficient to enable a defendant to prepare a defense[.]" *State v. Badoni*, 2003-NMCA-009, ¶ 16, 133 N.M. 257, 62 P.3d 348. A defendant is not entitled to a statement of facts if the defendant receives sufficient information about the nature and crime charged by alternative means. *See State v. Serna*, 1991-NMCA-102, ¶ 20, 112 N.M. 738, 819 P.2d 688 (holding that a defendant was not entitled to a statement of facts where he had been put on notice of crime charged through his receipt of copy of grand jury indictment, police report, and defense counsel's interview with State's witnesses); *State v. Aaron*, 1984-NMCA-124, ¶ 22, 102 N.M. 187, 692 P.2d 1336 (holding that the purpose of a statement of facts was fulfilled by providing the defendant with grand jury tapes providing adequate information allowing the defendant to prepare his defense). In this case, Defendant was provided with the indictment on the charge of CSP, access to the State's discovery, and the recording of the grand jury proceeding. Once Defendant obtained the grand jury materials and heard the prosecutor's explanation that the State was proceeding on both theories, Defendant had the information required to prepare a defense, and accordingly, was not entitled to a statement of facts.

**{7}** Finally, Defendant argues that had the district court granted his motion, it "would have held the prosecution to its announced mental incapacity theory, instead of allowing them to switch back and forth mid-trial." We disagree. Defendant cites to no authority for the proposition that the State must elect a particular theory prior to trial. The United States Supreme Court "has long acknowledged the Government's broad discretion to conduct criminal prosecutions, including its power to select the charges to be brought in a particular case." *Ball v. United States*, 470 U.S. 856, 859 (1985). Similarly, we have

held that the state need not elect a precise theory of culpability ahead of trial, so long as the defendant has adequate notice of the charges against him. *See State v. McCall*, 1983-NMCA-109, ¶ 30, 101 N.M. 616, 686 P.2d 958, *rev'd on other grounds*, 1984-NMSC-007, ¶ 1, 101 N.M. 32, 677 P.2d 1068 (holding that refusal to compel the state to elect the precise theory of culpability upon which the charges set forth in the indictment would be tried was not a basis for establishing that the defendant was without sufficient notice and information to adequately prepare his defense where no showing was made that any evidence produced by the state at trial came as a surprise to the defendant). Defendant was not prejudiced because, even without a statement of facts, the defense was on notice more than a year before trial that the prosecution was contemplating proceeding on either a theory of force or a theory that Victim lacked mental capacity, or both, as set forth in Section 30-9-10(A)(I), (4).

## II.      Denial of Defendant's Request for Victim's Records

**{8}**      Defendant argues that the district court erred in denying his motion requesting Victim's mental health records. He contends that because the State signaled an intent to proceed under a mental incapacity theory, the State was required "to obtain" and disclose Victim's "mental health records."[2] Defendant focuses his argument on Victim's capacity to consent under Section 30-9-10(A)(4), a theory which the State did not ultimately pursue at trial. *See id.* (stating that force or coercion can be established if a victim "suffers from a mental condition that renders the victim incapable of understanding the nature or consequences of the act").

**{9}**      "Where medical records are sought by the defense . . . we require a threshold showing by the defendant that the records may reasonably be expected to provide information material to the defense." *State v. Paiz*, 2006-NMCA-144, ¶ 15, 140 N.M. 815, 149 P.3d 579 (alteration, internal quotation marks, and citation omitted); *see* Rule 5-501(A)(6) NMRA (indicating the state shall provide the defendant with "any material evidence favorable to the defendant which the state is required to produce under the [D]ue [P]ocess [C]lause of the United States Constitution"). A trial court's discovery rulings are reviewed for abuse of discretion. *State v. Garcia*, 2013-NMCA-064, ¶ 27, 302 P.3d 111. "[F]or an abuse of discretion to be reversible, the defendant must demonstrate prejudice." *Id.*

**{10}**      Based on the State's assertion that it was considering proceeding under a theory that Victim had diminished mental capacity, Defendant filed a motion requesting that the State provide him with Victim's mental health records. The district court denied the motion. At trial, the State ultimately proceeded under a theory that Defendant used "physical force or physical violence" in causing Victim "to engage in anal intercourse[.]"

**{11}**      We need not decide whether the district court erred in denying Defendant's motion because Defendant fails to show that the denial prejudiced him. *See State v. Fernandez*, 1994-NMCA-056, ¶ 13, 117 N.M. 673, 875 P.2d 1104 ("In the absence of

---

2Defendant did not develop an argument below or on appeal that Defendant's mental health was material to the issue of consent and thus, we limit our analysis accordingly.

prejudice, there is no reversible error."). Defendant asserts that "the State pursued a mental incapacity theory alongside its physical force theory," but fails to cite to sufficient evidence in the record to substantiate this claim. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 (holding that a mere "assertion of prejudice is not a showing of prejudice").

{12}    We acknowledge that Victim stated on direct examination that another woman assisted her with "making a budget" and that Victim "gets confused easily and sometimes . . . doesn't understand things." The State also mentioned that Victim was "slower developmentally" during its opening statement, and in closing the State told the jury, "You saw her on the stand, she has a woman come in and help her, . . . help her to understand things, she gets confused easily. She's the perfect victim. She's small, has a hard time understanding, and easy to manipulate" However, we do not believe that these three oblique references to Defendant's ability to understand prejudiced Defendant for several reasons. First, neither the State nor defense counsel asked Victim any direct questions about her ability to understand or consent, nor did counsel inquire regarding her mental incapacity. As Defendant admits, Victim "never testified that she suffered from a mental incapacity, per se, just that she sometimes had trouble understanding things and that she needed help around the house." Defendant also acknowledges that "the State offered no expert testimony that [Victim] suffered from such an extreme mental incapacity that she met the definition provided in Section 30-9-10(A)(4)." Finally and most importantly, the jury was not even provided with the jury instruction related to mental incapacity. Instead, the jury convicted Defendant on the only theory that the State presented, and the only theory for which jury instructions were given: that "defendant caused [Victim] to engage in anal intercourse through the use of physical force or physical violence[.]" Because Defendant fails to show that he was prejudiced by the district court's denial of his motion, we hold there was no reversible error in denying Defendant's request for Victim's medical and psychological records.

## III.    Jury Instructions

{13}    Defendant makes two arguments with respect to whether the jury was properly instructed. First, he contends that even though the State pursued a physical force theory, the evidence supported a theory that Victim suffered from mental incapacity that rendered her incapable of consenting and therefore, Defendant was entitled to have the jury instructed on Victim's mental capacity. Second, Defendant contends that the district court committed fundamental error by failing to properly instruct the jury on unlawfulness. We address each in turn.

## A.    Instruction on Mental Incapacity

{14}    According to Defendant, the elements instruction for CSP, UJI 14-944 NMRA, should have included an alternative for mental capacity. Specifically, Defendant contends that the jury should have been instructed that [Victim] "was suffering from a mental condition so as to be incapable of understanding the nature or consequences of

what . . . [D]efendant was doing; AND [Defendant] knew or had reason to know of the condition of [Victim.]" UJI 14-944.

{15}     Because Defendant preserved his argument below, we review whether the district court's failure to instruct the jury on mental capacity was reversible error. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. "If the error has been preserved we review the instructions for reversible error . . . and seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* (internal quotation marks and citations omitted). "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Cooper*, 1999-NMCA-159, ¶ 7, 128 N.M. 428, 993 P.2d 745.

{16}     "The State, through its prosecutors, has broad discretion in determining what charges to bring and whom to prosecute." *State v. Estrada*, 2001-NMCA-034, ¶ 10, 130 N.M. 358, 24 P.3d 793; *State v. Ware*, 1993-NMCA-041, ¶ 8, 115 N.M. 339, 850 P.2d 1042 (stating "[t]he [s]tate has wide discretion to dismiss criminal charges, and absent an abuse of that discretion, the [district] court will not exercise its control over the movements of a given case"); *see also* 4 Wayne R. La Fave et al., *Criminal Procedure* § 13.2(a) (4th ed. 2020) ("The notion that the prosecuting attorney is vested with a broad range of discretion in deciding when to prosecute and when not to is firmly entrenched in American law.").

{17}     Defendant provides a brief argument, citing almost no authority, asserting that the jury should have been instructed on mental incapacity. Defendant alleges that "the State actually contended that [Victim] suffered from a mental incapacity that rendered her unable to consent." Defendant argues that "[a]t all points in this case, up until the end when the State suddenly announced that they were proceeding under a physical force theory, the State's theory pointed toward [Victim's] mental incapacity." However, Defendant solely directs our attention to a statement in the State's closing argument whereby the State argued, "You saw her on the stand, she has a woman come in and help her, . . . help her understand things, she gets confused easily. She's the perfect victim. She's small, has a hard time understanding, and easy to manipulate." Defendant failed to object to this statement during the trial, and as we previously noted, our review of the record indicates that the State chose to proceed under a theory of physical force, and made only passing references to Victim's ability to understand. Defendant fails to direct our attention to any legal authority standing for the proposition that a defendant may dictate which theory the State may proceed on at trial, nor does Defendant cite any authority that a Defendant may request a jury instruction that is inconsistent with the theory ultimately presented by the State. We conclude that the jury was not confused by the district court's refusal to issue the requested instruction on mental capacity, and accordingly, hold that the district court did not err in denying Defendant's request.

## B.     Unlawfulness Instruction

{18}     Finally, Defendant argues that the jury was not properly instructed on unlawfulness pursuant to UJI 14-132 because the district court gave two possible

alternatives, when only one of the alternatives should have been given. Defendant claims this was contrary to the Use Notes for UJI 14-132. We are unpersuaded.

**{19}**     Defendant failed to preserve this argument for appeal, and so we review for fundamental error. *See Benally*, 2001-NMSC-033, ¶ 12. "Under [fundamental error] we seek to determine whether a reasonable juror would have been confused or misled by the instruction." *Id.* (internal quotation marks and citation omitted). Assuming there was error, we then "review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the [d]efendant's conviction was the result of a plain miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 19, 135 N.M. 621, 92 P.3d 633 (internal citation omitted).

**{20}**     The district court instructed the jury in accordance with the Use Notes and precisely as Defendant is requesting on appeal. The jury was instructed that "[f]or the act to have been unlawful, it must have been done without consent and with the intent to arouse or gratify sexual desire." UJI 14-132. The jury was only given one alternative in accordance with the UJI 14-132, use note 3, which provide that if the language "without consent and" is used, as it was here, then "one of the three alternative that follows must be given." UJI 14-132, use note 3. The use notes further clarify when the district court should instruct the jury using multiple alternatives, which is when the language "without consent and" is omitted from the instruction. UJI 14-132, use note 3. The district court recognized that only one alternative should be given with the bracketed language, and the instruction was edited so that only one alternative was presented to the jury. We hold that there was no error in the unlawfulness instruction, as it was given in accordance with UJI 14-132, use note 3.

**CONCLUSION**

**{21}**     We affirm.

**{22}     IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**JANE B. YOHALEM, Judge**